DARR et al. v. AMARILLO WATER, LIGHT & POWER CO.

R. D. WOOD & CO. v. WHITE.

(Circuit Court of Appeals, Fifth Circuit. December 26, 1911.)

No. 18 (2,280).

SALES (§ 77*)—CONTRACT—CONSTRUCTION.

Intervener submitted to defendant receiver two separate proposals—one for the sale of pipe and specials, and another for the sale of hydrants, valves, and valve boxes. The first proposal, after quoting prices, recited: "The above tender is based on our regular terms of net cash 30 days from date. If you should elect to settle on cash against shipping documents" 1¼ per cent. discount. The proposal for hydrants and valves, after quoting prices, recited that they included delivery f. o. b. cars at delivery point, "same terms to apply in case of cast iron pipe." It then recited that, if the receiver was able to order the hydrants, valves, and valve boxes with the pipe, intervener would be willing to quote a discount of 6 per cent. from above prices, in which case the goods would be invoiced at the figure stated, and the discount allowed from the face of the entire invoice for pipe, hydrants, etc. Intervener had refused to offer better terms on the pipe than those mentioned in the first proposal, and had secured the contract for the pipe on that basis. The discount, if allowed on the entire purchase price of the pipe, hydrants, and valves, amounted to $1,073.84, while the purchase price of the hydrants alone amounted to but $2,189.09. *Held*, that the word "pipe," in the clause "the entire invoice of pipe, hydrants, etc.," was an evident error, and that the receiver was not entitled to a discount of 6 per cent. on the price of the pipe.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 77.*]

In Error to the Circuit Court of the United States for the Northern District of Texas.

Suit in equity by George W. Darr and another against the Amarillo Water, Light & Power Company, in which R. D. Wood & Co. intervened as against Frank A. White, receiver of defendant's property. From a judgment in favor of the receiver, intervener appeals. Reversed, and remanded for further proceedings.

The appeal in this case is taken from a decree of the Circuit Court overruling appellant's exceptions to the report of the special master and confirming his report. The question at issue arose in the course of the administration of the property of the Amarillo Water, Light & Power Company through a receivership under a bill in equity filed in the Circuit Court by certain of its stockholders. During the progress of the administration it became necessary for the receiver to purchase of appellant certain cast iron pipe, hydrants, valves, and other material for the completion of a contract. The dispute arose concerning the construction of the contract of purchase as to the proper scope of the discount allowable by it. The receiver applied to the Circuit Court for instructions as to the payment. The court referred the matter to a special master, to report his conclusions of fact and law, which he did adversely to appellant, and his report was confirmed by the Circuit Court, by the decree from which this appeal is taken.

On August 30, 1910, appellant submitted to the receiver two separate written proposals, one for the sale of pipe and specials, and another for the sale of hydrants, valves, and valve boxes. The proposal for the sale of pipe and specials, after quoting prices, contains this language: "The above tender is based on our regular terms of net cash 30 days from date. If you should elect to settle on cash against shipping documents, we would be

pleased to name a discount of 1¼ per cent." The proposal to sell hydrants and valves, about which the dispute relates, reads as follows:

"New York, August 30, 1909.

"Frank A. White, Esq., Receiver Amarillo Water, Light & Power Co., Amarillo, Texas—Dear Sir: In company with our proposal of this date, we are pleased to quote as follows on fire hydrants and gate valves, including boxes:

| | |
|---|---|
| 80 4-in. double nozzle 3-ft. hydrants............................ | $23.85 each |
| 34 4-in. Bell end gate valves and boxes........................ | 11.00 each |
| 19 6-in. Bell end gate valves and boxes........................ | 15.75 each |
| 7 8-in. Bell end gate valves and boxes......................... | 21.40 each |
| 2 10-in. Bell end gate valves and boxes........................ | 29.75 each |

"The above prices include delivery f. o. b. cars Amarillo. Same terms to apply in case of cast iron pipe. We regret your expectation of delay in placing order for this material; but, if you find that you are able to order with pipes, we would be willing, owing to our ability to avail ourselves of present opportunity for shipping at favorable rates, to quote you a discount of 6 per cent. from the above prices. In this case the goods would be invoiced at the above figures, and the discount allowed from the face of the entire invoice of pipe, hydrants, etc.

"In making this offer we trust that the quality of our hydrants and valves may receive your greatest consideration, as in these goods we claim distinction in minimum cost of maintenance. Our long experience in making a specialty of supplying materials for fire protection has led us to adhere strictly to a type of tools which are thoroughly dependable at a critical fire. These goods are fully brass-mounted, made and tested in accordance with the best of practice, and our metals are mixed chemically, supervised by our laboratory for the special strains to which they are sure to be subjected.

"Yours very truly,                                            R. D. Wood & Co.,
"Dict. E. J. L.                                                    Per E. J. Lame."

W. E. Gee and Hunter & Hunter (Sam J. Hunter, on the brief), for appellant.

Turner & Wharton (Thomas F. Turner, on the brief), for appellee.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The question presented for decision is whether the 6 per cent. discount mentioned in the letter of August 30, 1909, referring to the sale of hydrants and valves, applies only to the material therein proposed to be sold, or as well to the pipe and specials, proposed to be sold in the accompanying proposal of the same date. That the two proposals were separately made is evidenced by the fact that they were accepted at different times and places—the former on August 30th at New York, the latter on September 1st at Pittsburgh. The parties also contemplated, as possible, an acceptance of the former along with a rejection of the latter. They accordingly, when accepted, constituted separate contracts, and are so to be construed.

The proposal for the sale of hydrants and valves contains this provision:

"The above prices include delivery f. o. b. cars Amarillo. Same terms to apply in case of cast iron pipe."

And afterwards this clause:

"We regret your expectation of delay in placing order for this material; but, if you find that you are able to order with pipes, we would be willing, owing to our ability to avail ourselves of present opportunity for shipping at

favorable rates, to quote you a discount of 6 per cent. from the above prices. In this case the goods would be invoiced at the above figures, and the discount allowed from the face of the entire invoice of pipe, hydrants, etc."

The prices quoted for the material were followed by the statement of the general terms of the seller, which were described as the same terms as in case of cast iron pipe under the first proposal. The letter then offers a special inducement in the way of discount available to the purchaser, if the material is ordered with the pipe, due to special shipping facilities then open to the seller. The discount proposed in that event is one of "6 per cent. from the above prices," which refers to the prices in the second proposal, and is confined to hydrants and valves. So far the contract is free from ambiguity. Then follows the clause relied upon by the receiver and which is in these words:

"In this case the goods would be invoiced at the above figures, and the discount allowed from the face of the entire invoice of pipe, hydrants, etc."

The receiver relies upon the presence of the words "entire" and "pipe" in this clause to support his contention that the 6 per cent. discount was to be deducted from the total purchase price of the pipe, hydrants, and valves. The clause may well bear two constructions—the one contended for by the receiver, and another that the words "the entire invoice of pipe, hydrants, etc.," are mere words of description or identification of the bill from which the allowance of discount from the price of the hydrants and valves is to be made, and do not fix the amount to be subject to the discount. We think, in view of the previous language of the proposal, the more reasonable construction of this language is that contended for by the appellant. The contract is, at best, ambiguous. If free from ambiguity, resort could not be had to the circumstances and the situation of the parties to determine their meaning. In view of the patent ambiguity of the contract, we are permitted thus to look beyond its language to ascertain the intention of the parties to it.

The situation of the parties leaves no doubt in our minds as to the proper meaning to be given it. The appellant had refused to accord better terms on the pipe than those mentioned in the first proposal. It had already secured the contract for the pipe on this basis. The discount on the entire purchase price of the pipe, hydrants, and valves amounted to $1,073.84, and the purchase price of the valves and hydrants amounted to but $2,189.09. It seems inconceivable that the appellant, to secure an order of the latter amount, would have been willing to sacrifice an amount equal to one-half of it from the price of the order for the pipe already secured. We prefer to accord to the contract the construction heretofore given to it by us, or to conclude that the word "pipe" was inserted in error, in view of its repugnance to the language of the contract and the manifest intention of the parties.

In accord with the suggestion in appellant's brief of an admitted mistake in the amount of the claim, if allowed, which may be corrected in the court below, the decree of the Circuit Court will be reversed, and the case remanded for further proceeding in conformity to the opinion.